**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor (Order No. 312).**

**In re Application for Stay of (Order No. 296)**

**No. 70–347.**

United States District Court,
E. D. Pennsylvania.

July 2, 1971.

Edwin P. Rome, Matthew W. Bullock, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Trustees of Penn Central Transp. Co.

James William Moore, New Haven, Conn., Spencer Ervin, Jr., Philadelphia, Pa., for Trustee of the New York, New Haven and Hartford Railroad.

## MEMORANDUM

FULLAM, District Judge.

On June 29, 1970, the Supreme Court of the United States handed down its opinion in the New Haven Inclusion Cases, 399 U.S. 392, 90 S.Ct. 2054, 26 L. Ed.2d 691 (1970), remanding certain aspects of the New Haven reorganization case to the reorganization court (United States District Court for the District of Connecticut), for further proceedings before the Interstate Commerce Commission and the appropriate federal courts. On August 10, 1970, the Connecticut court entered an order directing various interested parties, including the New Haven Trustee and the Penn Central, to file written statements of position with respect to six specified subjects, to be considered by that court in framing its order to carry out the remand from the Supreme Court.

On June 11, 1971, the Connecticut court filed a "Memorandum of Decision," expressing its conclusions as to the subjects listed in its earlier order, and as to the nature of the order which should be entered in remanding the matter to the Interstate Commerce Commission. Among other things, the Connecticut court concluded that an equitable lien should now be imposed upon all tangible assets formerly owned by the New Haven railroad and conveyed to the Penn Central on December 31, 1968, the lien to be retroactive to that date; that the Penn Central Trustees should be ordered, commencing, July 1, 1971, to pay over currently to the New Haven Trustee one-half of the net income from the

"Grand Central Terminal Properties" in New York City; and that certain payments on account, which had been made in the form of stocks and bonds, in connection with the 1968 conveyance, should no longer be regarded as payments on account, but merely as security for future payment of the total purchase price. The court scheduled a further hearing for Tuesday, June 22, 1971, for the formulation and entry of an order implementing the views expressed in the Memorandum of Decision.

Upon learning of the entry of the Memorandum of Decision above referred to, the Penn Central Trustees petitioned this Court for instructions, and for injunctive relief against the entry of such an order, to the extent that it might interfere with the exclusive jurisdiction of this Court or unduly hamper this reorganization. After due notice, a hearing on the Trustees' petition was held on Monday afternoon, June 21, 1971. At that hearing, I made it quite clear that, in order to minimize the likelihood of creating an appearance of unseemly conflict between two courts of coordinate standing,[1] this Court would not attempt in any way to interfere with the scheduled hearing in the Connecticut court the following day, nor with the entry by that court of whatever order that court deemed appropriate. However, I concluded (1) that the implementation of any order requiring the Penn Central Trustees to make immediate payments, or to sequester income, would obviously impinge upon the jurisdiction of this Court and unduly interfere with the reorganization of the Debtor, and would, in all probability, ultimately be determined to be beyond the jurisdiction of the Connecticut court; and (2) the implementation of any order imposing an equitable lien would be likely to have similar adverse consequences, and, at the very least, involved substantial jurisdictional issues. I determined that a further hearing should be held in this

---

1. Apart from the question of exclusive jurisdiction under § 77, it is significant that a proof of claim asserting the same issues was filed by the New Haven Trustee in this Court in May, and is still pending for disposition.

Court, at which the various complex and weighty legal issues could be fully briefed and argued, so that this Court might make an informed decision as to the proper course to follow; and that, in the interim, the *status quo* should be preserved, to the extent of preventing actual interference with the Debtor's property and the reorganization process.

Accordingly, Order No. 296 was entered, fixing a date for further hearing, on July 26, 1971, and temporarily restraining the New Haven Trustee and all persons generally from attempting to enforce payment from the Debtor's estate or taking action to enforce any lien thereon, until the hearing. In reality, this Order did no more than particularize and call attention to the provisions of Order No. 1 in this proceeding. It is noteworthy that counsel for the New Haven Trustee stated (transcript p. 2467) that he would recommend a stay of any order which might be entered in the Connecticut court "until appellate review can be obtained by the Supreme Court." Nevertheless, the New Haven Trustee has now filed an application for a stay of Order No. 296. Since Order No. 296 clearly did not interfere with the June 22 hearing in the Connecticut court, and since it does nothing more than attempt to preserve the *status quo* until the hearing in this Court, the present application for a stay is in reality a request that the Order be vacated, so that steps can be taken in advance of the July 26 hearing in this Court to deplete the Debtor's estate or otherwise interfere with this reorganization. The application will be denied.

■ The principal grounds asserted in the application are that, since the order ultimately entered in the Connecticut court on June 22 does not direct the Penn Central Trustees to make immediate payments (as had been intimated in the Memorandum of Decision of June 11), the restraints of this Court's Order No. 296 are unnecessary ("premature, academic and improper"). There are at least two answers to this argument. In the first place, it is far from clear that the June 22 orders of the Connecticut court would necessarily be interpreted as limiting in any way the conclusions expressed in the June 11 "Memorandum of Decision," which itself may constitute an order of that court. Paragraph 8 of the Order of Remand appears to incorporate by reference the terms of the Memorandum of Decision.

More importantly, the Order of Remand purports to appropriate for the New Haven Trustee one-half of the excess income from the Grand Central Terminal properties, commencing July 1, 1971. The distinction between this provision and a direction to the Penn Central Trustees to pay, may prove to be nebulous. Moreover, a separate order was entered on the same day (Order No. 647) in which the Connecticut court "on its own motion" appointed an attorney "as the court's counsel to take such steps * * * as he may deem to be necessary or appropriate to preserve the equitable lien and constructive trust declared by this court * * *"; including, apparently, recordings in four states to be-cloud the title to the property of the Debtor.

I do not profess a complete understanding of all of the possible ramifications of the June 22 orders, but I am not persuaded that the *status quo* would continue undisturbed in the absence of the restraints imposed by Order No. 296.

■ It is further suggested that Order No. 296 is invalid because it does not contain supporting reasons, pursuant to Federal Rule of Civil Procedure 52(a). Assuming the applicability of this Rule in bankruptcy, I believe the reasons were adequately expressed of record at the conclusion of the hearing on June 21.

Finally, it should be noted that there has never been, and is not now, any suggestion that the New Haven Trustee would in any way be prejudiced by preserving the *status quo* until the hearing in this Court on July 26 (a date selected by agreement of counsel in order to suit the convenience of New Haven counsel).